UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DERRICK ECHOLS, JR. ) | |
| ) | |
| Plaintiff, ) | No. 11 C 6686 |
| ) | |
| v. ) | Judge George M. Marovich |
| ) | |
| DR. FREDERICK A. CRAIG, DDS, and ) | |
| DR. JACQUELINE MITCHELL, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

After problems resulting from the extraction of one of his wisdom teeth, plaintiff Derrick Echols, Jr. ("Echols") filed a suit seeking relief under § 1983. The Court now screens his second-amended complaint, in which he alleges that defendants Dr. Frederick A. Craig, DDS ("Dr. Craig") and Dr. Jacqueline Mitchell ("Dr. Mitchell") were deliberately indifferent to his medical needs in violation of his constitutional right to be free from cruel and unusual punishments. For the reasons set forth below, the Court dismisses this case with prejudice.

### I. Background

In his original complaint and in his amended complaint, plaintiff Echols set out the following facts:

Echols is an inmate at Stateville Correctional Center ("Stateville") in Joliet, Illinois and has been since September 2002. Defendant Dr. Craig is a dental surgeon employed by Wexford Health Sources, Inc., which provides medical and dental services to inmates at Stateville.

On July 14, 2009, at Stateville's Health Care Unit, Dr. Craig extracted Echols's wisdom tooth. Once the anesthesia wore off, Echols began experiencing abnormal pain. When he returned to have his sutures removed on July 23, 2009, another dentist, Dr. Mitchell, removed the stitches. Echols complained to Dr. Mitchell that he was experiencing intense pain, a discharge of puss and blood and a metallic taste near the extraction site. Dr. Mitchell told Echols these symptoms were common and would go away. Echols continued to experience pain and tried (but was not allowed) to return to the Health Care Unit.

Four days later, on July 27, 2009, Echols rinsed his mouth with salt water. As he did so, two objects came out from under his gums and into his mouth. The two objects were gauze and a half-inch metal drill bit. The next day, Echols returned to the Health Unit, where a physician took an x-ray of Echols's mouth and learned that a portion of the root of Echols's wisdom tooth still remained at the extraction site. Dr. Mitchell reopened the wound and removed both the remaining root and more gauze. After that, Echols healed normally.

In his first complaint, Echols alleged that Dr. Mitchell was deliberately indifferent to his medical needs when she failed to take an x-ray of his mouth on July 23. In his original and in his amended complaint, Echols alleged that Dr. Craig was deliberately indifferent to his medical needs when, during the oral surgery to remove Echols's wisdom tooth, he left a portion of the tooth root, part of a drill bit and gauze at the extraction site. Echols alleged that, "[b]y failing to remove multiple foreign objects from the tooth extraction site, [Dr. Craig] ignored an obvious risk to Mr. Echols' health and caused Mr. Echols over two weeks of extreme and unnecessary pain."

The Court has twice issued dismissal orders in this case. The first time, the Court granted Dr. Mitchell's motion to dismiss on the grounds that Echols had alleged, at best, negligence, which does not amount to a constitutional violation. Echols's amended complaint was drafted by his appointed counsel. In his amended complaint, Echols brought claims against only Dr. Craig. Faced with Dr. Craig's motion to dismiss, Echols argued that Dr. Craig exhibited deliberate indifference by leaving behind a drill bit, which Echols described as being a medical decision so far afield from the standard of care as to constitute deliberate indifference. The Court dismissed the claims against Dr. Craig, reasoning that without allegations that Dr. Craig knew he had left the drill bit behind, he could not have made a *decision* (to leave it behind) that was so far afield from the standard of care as to be deliberately indifferent.

The Court gave Echols a chance to amend. Echols is no longer represented by counsel, and he has filed, on his own, a proposed second-amended complaint, which the Court must pre-screen. In his second-amended complaint, Echols includes additional factual allegations which, if true, would suggest that both Dr. Craig and Dr. Mitchell had reason to believe the drill bit was lost in Echols' mouth but sutured his wound nonetheless. Echols now alleges:

> 10. As Dr. Craig was attempting to pull plaintiff's tooth, Dr. Craig was utilizing his dentistry drill and all of a sudden plaintiff heard a cracking, popping sound in which plaintiff felt a slight pain even though he was heavily sedated, and stated, "Ugh! What was that?" Dr. Craig stated, "Gosh, the drill bit broke." Plaintiff then observed Dr. Craig turn his back and began to retrieve metal objects from the dentist kit and come back with a new drill.

> 11. Plaintiff proceeded to ask, "What's going on?" Dr. Craig stated, "Lay back and quit talking so much. No worries. Everything's okay." Dr. Craig began to continue the extraction of plaintiff's tooth.

> 12. Dr. Jacqueline Mitchell was assisting Dr. Craig throughout the procedure and also noticed that the drill bit was broken and asked Dr. Craig, "Where's the

> drill bit?" Dr. Craig told her, "It broke," and then began to place silk sutures on a needle and began to pack my extraction site with [gauze] and began to suture plaintiff's gums back close.

(Plaintiff's Second Amended Complaint at 2) (capitalization omitted). Plaintiff alleges that after Dr. Craig sutured plaintiff's gums, he took an x-ray of plaintiff's mouth, and that x-ray showed a drill bit inside the extraction area. Plaintiff also alleges that on the day his wisdom tooth was extracted, the prison was put on minor lock-down, because the health care unit had reported a missing drill bit from dentistry. The drill bit was not found.

## II. Discussion

Pursuant to 28 U.S.C. § 1915A, a court must "review, before docketing, . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). "On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint--(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1).

When reviewing a complaint under §1915A, "a court is not bound, as it usually is when making a determination based solely on the pleadings, to accept without question the truth of the plaintiff's allegations." *Denton v. Hernandez*, 504 U.S. 25, 32 (1992). Instead, the court is authorized "to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Denton*, 504 U.S. at 32. Thus, a court may dismiss a claim as factually frivolous when the allegations are fanciful, fantastic, delusional, irrational or wholly incredible. *Denton*, 504 U.S. at 33. A court may not, however, dismiss a claim merely because the allegations are unlikely. *Id.*

The question for this Court, then, is whether Echols's new allegations are merely unlikely or reach the level of incredible or fanciful, a product of Echols's wishful thinking. (The Court does not think the new allegations are delusional or irrational.) Several things make the Court think the new allegations are fanciful and incredible. First, the new allegations were never mentioned in plaintiff's prior complaints or grievances, despite the fact that plaintiff's complaints were quite detailed. Furthermore, when Echols filed his amended complaint, he was represented by counsel, who likely would have understood the relevance of the new allegations (and therefore included them in the amended complaint) had Echols mentioned these new allegations to his appointed attorneys. That suggests that Echols did not mention the new allegations to his appointed attorneys, which, in turn, suggests that the new allegations are a product of Echols's imagination. Another reason is that Echols now alleges (for the first time) that Dr. Mitchell was involved with the initial tooth extraction, but Echols' medical records make no mention of Dr. Mitchell's involvement. Relatedly, Echols now alleges that he heard Dr. Mitchell and Dr. Craig discussing the missing drill bit during the extraction, despite the fact that Echols was, in his own words, heavily sedated.

The reason Congress requires courts to pre-screen these types of complaints is that "a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious or repetitive lawsuits." *Denton*, 504 U.S. at 31. Here, although the Court does not doubt that plaintiff could state a claim for malpractice in state court (or that he suffered pain), his new allegations fall in the category of factually frivolous. Without them, he cannot state a claim. Thus, the complaint must be dismissed.

## III. Conclusion

For the reasons set forth above, the Court dismisses this case with prejudice.

ENTER:

George M. Marovich
United States District Judge

DATED: February 7, 2014